

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-93,089-01

**In re STATE OF TEXAS, ex rel. BRIAN W. WICE, relator**

## ON APPLICATION FOR A WRIT OF MANDAMUS
## AGAINST THE FIRST COURT OF APPEALS

RICHARDSON, J., delivered the opinion of the Court in which HERVEY, NEWELL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. SLAUGHTER, J., filed a concurring opinion in which RICHARDSON, NEWELL, and MCCLURE, JJ., joined. KELLER, P.J., filed a dissenting opinion in which KEEL, J., joined. YEARY, J., filed a dissenting opinion.

## O P I N I O N

Judge George Gallagher, elected judge for the 396th District Court in the Eighth Administrative Judicial Region, was specifically assigned by Presiding Judge Mary Murphy of the First Administrative Judicial Region to preside over *State v. Paxton* in the 416th District Court in the First Administrative Judicial Region in July of 2015. The issue before this Court, on mandamus, is whether Judge Gallagher had the constitutional and statutory authority to preside over *State v. Paxton* when he granted a change of venue to

Harris County in April of 2017.[1] We hold that he did, regardless of any other assignment orders that were issued by Presiding Judge David Evans. We, therefore, conditionally grant the State's petition for writ of mandamus.

## I. Background

### A. *How Judge Gallagher Became the Judge Presiding Over This Case*

In 2015, a Collin County Grand Jury returned three felony indictments against the Real-Party-in-Interest, Warren Kenneth Paxton, Jr. These cases were assigned to the 416th District Court of Collin County. The 416th District Court is in the First Administrative Judicial Region and Judge Chris Oldner was the judge presiding at that time. Judge Oldner voluntarily recused himself from the case and "referred" it to Presiding Judge Mary Murphy of the First Administrative Judicial Region.[2] Presiding Judge Murphy requested

---

[1] In his dissent, Judge Yeary claims the "real" issue is whether the Harris County District Court judges had "any authority at all to send the case back to Collin County. The Court's analysis misses this critical point." J. Yeary's Dissent, at *1. There was only one issue raised by Real-Party-in-Interest to void or reverse Judge Gallagher's decision. Specifically, in April of 2017, Real-Party-in-Interest claimed Judge Gallagher had no authority to preside over the case because the orders from the regional presiding judge of the Eighth Administrative Judicial Region had expired. That sole issue was raised in motions before two district judges in Harris County, the First Court of Appeals, and on mandamus before our Court. Any other grounds are not mentioned in the record. What either Judges Johnson or Luong might have been thinking is pure speculation. *Franklin v. State*, 693 S.W.2d 420, 431 (Tex. Crim. App. 1985) (disallowing consideration of assertions not supported by the record on appeal). Moreover, those speculative reasons could only have been raised on direct appeal, not via the claim that Judge Gallagher had no authority to act. *See e.g., Gregory v. State*, 37 S.W. 752, 752 (Tex. Crim. App. 1896).

[2] App. to Real-Party-in-Interest Paxton's Response to Relator's Petition for Writ of Mandamus [hereinafter *Paxton App.*], at *006 ("Voluntary Recusal"); TEX. R. CIV. P. 18a(f)(1)(B), 18b; *see Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (affirming *DeBlanc v. State*, 799 S.W.2d 701 (Tex. Crim. App. 1990)'s implicit holding that TEX R. CIV. P. 18a applies to criminal cases).

2

and assigned Judge Gallagher, an elected district court judge sitting outside the First Administrative Judicial Region, to preside over this case.

At the heart of this dispute are three "assignment orders" issued by two regional presiding judges (Presiding Judges David Evans and Mary Murphy) from different administrative judicial regions. We will refer to them in order as *Assignment Order I* by Presiding Judge Evans signed on July 28, 2015; *Assignment Order II* by Presiding Judge Murphy signed on July 29, 2015; and *Assignment Order III* by Judge Evans signed on December 21, 2015.

### *Assignment Order I* [3]

On July 28, 2015, Presiding Judge David Evans of the Eighth Administrative Judicial Region issued the following order:

> Pursuant to Section 74.056, Texas Government Code, I assign the Honorable George Gallagher, District Judge of the 396th Court to the
>
> 1st Administrative Judicial Region for reassignment by the Presiding Judge thereof.

---

"Presiding Judge" is the statutory title of a judge charged with overseeing one of the eleven administrative judicial regions in Texas. TEX. GOV'T CODE § 74.041(2). Except when referring to them by title, we will refer to them as "regional presiding judges" for the sake of clarity in this opinion.

[3] *Paxton App.*, at \*006 ("The State of Texas Eighth Administrative Judicial Region Order of Assignment by the Presiding Judge, July 28, 2015" [hereinafter *Assignment Order I*]). Though the title uses the term "assignment," we note that it merely assigns an active district judge to another administrative judicial region for "reassignment." Rather than actually *assigning* Judge Gallagher to a specific court or case, it generally and effectively assigns the judge to another region.

The judge is assigned for a period of 157 days, beginning July 28th, 2015. If the judge begins a trial on the merits during the period of this assignment, the assignment continues in such case until plenary jurisdiction has expired or the undersigned Presiding Judge has terminated this assignment in writing, whichever comes first.[4]

This order purports to assign Judge Gallagher to the First Administrative Judicial Region, so Judge Murphy could then "reassign" him to any court or case within the First Region; however, this assignment order expired on December 31, 2015.[5]

<u>*Assignment Order II* [6]</u>

The next day, on July 29, 2015, Presiding Judge Murphy, pursuant to Section 74.056, Texas Government Code[7] (as noted on the order), assigned Judge Gallagher to the 416th District Court of Collin County for the case against the Real-Party-in-Interest:

---

[4] *Assignment Order I.*

[5] We note, as an elected judge, Judge Gallagher continued to preside over his own court, the 396th District Court in Tarrant County, in the Eighth Judicial Administrative Region during the entire period of this case.

[6] *Paxton App.*, at *007 ("The State of Texas First Administrative Judicial Region Order of Assignment by the Presiding Judge, July 29, 2015" [hereinafter *Assignment Order II*]).

[7] As relevant in Section 74.056 of the Texas Government Code:

ASSIGNMENT BY PRESIDING JUDGE

(a) A presiding judge from time to time shall assign the judges of the administrative region to hold special or regular terms of court in any county of the administrative region to try cases and dispose of accumulated business.
(b) The presiding judge of one administrative region may request the presiding judge of another administrative region to furnish judges to aid in the disposition of litigation pending in a county in the administrative region of the presiding judge who makes the request.

4

This assignment is for the cause(s) and style(s) as stated in the conditions of assignment from this date until plenary power has expired or the undersigned Presiding Judge has terminated this assignment in writing, whichever occurs first.

CONDITIONS OF ASSIGNMENT

NOS. 416-81913-2015, 416-81914-2015, 116-81915-2015; State of Texas v. Warren Kenneth Paxton, Jr.

In addition, whenever the assigned Judge is present in the county of assignment for a hearing in the above cause(s), the Judge is also assigned and empowered to hear, at that time, any other matters presented for hearing.[8]

This was the only case Judge Murphy assigned Judge Gallagher to preside over in the First Administrative Judicial Region during the dates in question. Judge Gallagher was still presiding over matters on the case through April of 2017. Furthermore, as far as the record shows, Judge Gallagher never exercised his statutory right to object to his assignment to the case.[9] Unlike Presiding Judge Evans's orders, Presiding Judge Murphy's order did not have an expiration date, nor did she ever terminate Judge Gallagher's assignment.

---

[8] *Assignment Order II.*

[9] *See* TEX. GOV'T CODE § 74.060(a) ("An active judge may not, without the judge's consent, be assigned out of the judge's district or county for more than 10 calendar days in a year.").

5

*Assignment Order III* [10]

Pre-trial matters continued through 2015. On December 21, 2015, Presiding Judge Evans extended Judge Gallagher's assignment to the First Administrative Judicial Region. This order stated:

> [District Judge Gallagher] is assigned for a period of 366 days, beginning January 1, 2016. If the judge begins a trial on the merits during the period of this assignment, the assignment continues in such case until plenary jurisdiction has expired or the undersigned Presiding Judge has terminated this assignment in writing, whichever occurs first.[11]

There was no express language in *Assignment Order III* extending Judge Gallagher's assignment to the First Administrative Judicial Region after January 1, 2017, absent the commencement of trial.[12] Specifically, it is Judge Evans's second order (*Assignment Order III*) that both the trial court and court of appeals relied upon to invalidate Judge Gallagher's order changing venue to Harris County, because it conflicted with Judge Murphy's assignment order. *Assignment Order III* expired on January 1, 2017 and no subsequent order with a new expiration date was ever issued.

---

[10] *Paxton App.*, at *008 ("The State of Texas 8th Administrative Judicial Region Order of Assignment by the Presiding Judge, December 21, 2015" [hereinafter *Assignment Order III*]).

[11] *Assignment Order III*.

[12] We note that the emails between the administrative assistants for the First and Eighth Presiding Judges demonstrate on their face that the Presiding Judge Evans of Judge Gallagher's home region intended to keep Judge Gallagher assigned to the First Administrative Judicial Region past the January 2017 expiration of *Assignment Order III*. *See* App. to State's Petition for Writ of Mandamus, at Tab 31. Skepticism about the formality requirements of an assignment order have been previously expressed. *See Ex parte Reed*, No. WR-50,961-10, 2019 WL 6108568, at *1–2 (Tex. Crim. App. Nov. 15, 2019) (Keasler J., concurring) (reasoning against reading the four corners of an assignment order as fully controlling).

6

**B.** *How the Change in Venue to Harris County Came About*

Pre-trial matters continued past the 366 days stated in *Assignment Order III*. On February 9, 2017, the State filed a motion to change venue. Judge Gallagher granted the State's motion on March 29, 2017 without deciding the new venue. Real-Party-in-Interest timely objected to the venue transfer, which was overruled by Judge Gallagher. On March 30, 2017, Judge Gallagher sent an email to the parties offering them options to consider for the new venue:

> The options that I am making known regarding change of venue are as follows:
>
> Option 1. Article 31.02 of CCP [the Code of Criminal Procedure] mandates that I transfer to [an] adjoining district. If I follow the statute, I will transfer to Dallas County. There is a ceremonial courtroom that I believe is located in their civil courts building that may be available.
>
> Option 2. I would transfer to Harris County. It is my understanding that there is a ceremonial courtroom in the criminal building that may be available. Additionally, I recognize that the majority of the lawyers are from Harris County which I would hope assist you.
>
> Option 3. I would transfer to Tarrant County. In our building, we have four vacant courtrooms as a result of our civil courts moving to a new building. . . . The remaining courtrooms would be set aside for the state and the defense respectively as your "war rooms." The state would have sole access to their room and the defense would have sole access to their room. This could allow everyone to have a place to work while the trial was being conducted.
>
> If any of you have other options, I am open to suggestion.
>
> * * *
>
> If we do an option other than No. 1, it will require it be done by agreement. I would make sure that the record reflected that, if agreed to transfer to a non-

adjoining county, it would NOT constitute a waiver of the underlying objections to granting of the motion for change of venue.[13]

On April 10, 2017, Judge Gallagher conducted a hearing on where the new venue should be. During that hearing, both parties agreed to transfer the case to Harris County—a non-contiguous county.[14] On April 11, 2017, Judge Gallagher issued a written order designating the new venue to be Harris County.[15]

On May 10, 2017, Real-Party-in-Interest filed an objection to all rulings made by Judge Gallagher after January 1, 2017, and filed a corresponding motion to return the case to the regional presiding judge covering Collin County (Presiding Judge Murphy). Real-Party-in-Interest argued that Judge Gallagher's authority lapsed when *Assignment Order III* expired at 12:00 a.m. on January 2, 2017.

On May 15, 2017, Real-Party-in-Interest filed a Petition for Writ of Mandamus in the Fifth Court of Appeals challenging Judge Gallagher's continued involvement in the case. The Fifth Court of Appeals found Collin County lost jurisdiction immediately *after*

---

[13] *See Paxton App.*, at *082.

[14] *See Paxton App.*, at *080–081 (Telephonic Hearing on State's Motion for Change of Venue, (4 RR 8)). We note that even though the Real-Party-in-Interest agreed to the transfer to Harris County, he preserved his objections to the change in venue.

[15] Although Article 31.02 of the Code of Criminal Procedure requires the new venue to be an "adjoining district," there is no dispute that Judge Gallagher had authority to choose Harris County. As shown above, the parties consented to it after Judge Gallagher warned them about the requisites of Article 31.02. *Ex parte Watson*, 601 S.W.2d 350, 351 (Tex. Crim. App. 1980) ("Improper venue, unlike jurisdiction, may be waived by the defendant's failure to object at trial. . . . Unlike jurisdiction, venue may be acquired by consent."). Thus, Judge Gallagher had *discretion,* as part of being a constitutionally elected judge, to choose Harris County.

8

Judge Gallagher signed the order changing venue to Harris County on April 11, 2017.[16]

Any rulings made after that April 11, 2017 venue transfer order were void and the Collin County District Clerk was to transfer the case files to Harris County.[17] On June 9, 2017, the case was transferred to Harris County.[18]

## C. *The Dispute Over Where The Case Belongs and to Which Judge Continued*

Because he lacked the consent of all parties to go with the case, Judge Gallagher did not continue to preside over the case after the change of venue.[19] Thus, upon transfer to Harris County, the case was assigned to Judge Robert Johnson of the 177th District Court of Harris County.[20] On July 18, 2019, over two years later, Real-Party-in-Interest filed a motion "to set aside change of venue as void and return cases to Collin County, Texas."[21] A year later on June 25, 2020, Judge Johnson granted Real-Party-in-Interest's motion to set aside Judge Gallagher's April 11, 2017 venue transfer order as void and ordered the case be returned to Collin County.[22]

---

[16] *In re Paxton*, Nos. 05-17-00507-CV, 05-17-00508-CV, & 05-17-00509-CV, 2017 WL 2334242, at *4 (Tex. App—Dallas May 30, 2017, orig. proceeding).

[17] *Id*. at *5; TEX. CODE CRIM. PROC. art. 31.05.

[18] *In re State ex rel. Wice*, 629 S.W.3d 715, 719–20 (Tex. App—Houston [1st Dist.] 2021, orig. proceeding).

[19] TEX. CODE CRIM. PROC. art. 31.09(a); *In re Paxton*, 2017 WL 2334242, at *5.

[20] *Id*.

[21] *Paxton App*., at *269.

[22] *Id*. at *152.

The State filed a petition for writ of mandamus in the First Court of Appeals asking to vacate Judge Johnson's June 25, 2020 order returning the case to Collin County. However, on July 6, 2020, Judge Johnson voluntarily recused himself and referred the case to Presiding Judge Susan Brown of the Eleventh Administrative Judicial Region for reassignment.[23] The case was then reassigned to Judge Jason Luong of the 185th District Court in Harris County.[24] The First Court of Appeals abated the matter to allow Judge Luong to reconsider Judge Johnson's order returning the case to Collin County.[25] On October 23, 2020, Judge Luong held that he lacked jurisdiction to reconsider the matter since the case was transferred back to Collin County immediately after Judge Johnson

---

[23] *See Russell v. Harris Cty.*, 500 F. Supp. 3d 577 (S.D. Tex. 2020). Judge Johnson subsequently recused himself. *See Paxton App.*, at *153–58.

[24] *In re State ex rel. Wice*, 629 S.W.3d at 718.

[25] App. to State's Petition for Writ of Mandamus, at Tab 15 ("Order of Abatement").

signed the June 25, 2020 order.[26] Judge Luong alternatively held if in fact he had jurisdiction to consider the underlying merits, he would void the order transferring venue.[27]

### D. *The First Court of Appeals's Decision—Judge Gallagher's Authority Had "Expired"*

On May 27, 2021, a divided First Court of Appeals denied the State's petition for writ of mandamus.[28] In their analysis, the lower appellate court applied specific-controls-over-general and earlier-controls-over-later-terms principles to *Assignment Orders I*, *II*, and *III*. The court of appeals found that Judge Gallagher's authority under *Assignment Order I* (extended by *Assignment Order III*) had expired when Judge Gallagher entered the April 11, 2017 venue transfer order moving the case to Harris County. Per the First Court of Appeals, the later, general *Assignment Order II* to the case was controlled by the earlier,

---

[26] App. to State's Petition for Writ of Mandamus, at Tab 16 ("Order on Reconsideration of Prior Order Vacating Order of Transfer to Harris County, Texas"). Specifically, Judge Luong's order stated:

> Accordingly, this Court is without jurisdiction to review the challenged order or any pending motions in these cases.
>
> In the alternative, if it is determined by the First Court of Appeals, or by any other or higher appellate court that the 185th Judicial District Court does have jurisdiction to review and reconsider the June 25, 2020 Order, it is the Court's finding that Judge Gallagher was without jurisdiction to enter the March 30, 2017 order, that the March 30 2017 order and related venue orders should be set aside, and that the Harris County District Clerk's file should be transferred to the Collin County District Clerk.

*Id*.

[27] *Id*.

[28] *In re State ex rel. Wice*, 629 S.W.3d at 718.

11

specific *Assignment Order I* to the region. But Justice Goodman dissented and argued that Article V, Section 11 of the Texas Constitution provided Judge Gallagher with the authority to issue the venue transfer order, after his assignment order to the First Administrative Judicial Region expired.[29] Justice Goodman noted in his concurring and dissenting opinion:

> "As for the majority's contention that applying Article V, Section 11 in this instance would undermine the Court Administration Act, the majority puts the cart before the horse. Our Constitution is supreme. If its provisions undermine a statute, it is the statute in this case that must give way. Courts have repeatedly said so with respect to Article V, Section 11 of our Constitution."[30]

On September 21, 2021, the First Court of Appeals denied en banc reconsideration.[31] Justice Guerra wrote in dissent to the denial of en banc reconsideration arguing the opposite. Justice Guerra reasoned, that *Assignment Order I* (the July 28, 2015 order assigning Judge Gallagher to the First Administrative Judicial Region) was the actual "general" order and *Assignment Order II* assigning Judge Gallagher to the Real-Party-in-Interest's case was the actual "specific" order. Hence, Judge Gallagher was authorized to

---

[29] *Id*. at 728–31 (Goodman, J., concurring & dissenting).

[30] *Id*. at 731.

[31] *In re State ex rel. Wice*, 634 S.W.3d 370, 370 (Tex. App—Houston [1st Dist.] 2021, orig. proceeding) (mem. op.).

We note that the assignments of elected, visiting, and retired judges are a routine practice across the State, and the resolution of this original proceeding is likely to guide the interpretation of assignment orders.

preside over the case until its conclusion.[32] In short, Judge Guerra opined that the order signed by Presiding Judge Murphy of the First Administrative Judicial Region should carry the day: "By using the incorrect labels to interpret the assignment orders, the majority opinion renders the specific assignment meaningless."[33]

## II.     The Issue Before This Court

The State then filed this petition for writ of mandamus. In this second original proceeding, the State seeks to compel the trial court (Judge Johnson presiding initially followed by Judge Luong) to vacate its order voiding Judge Gallagher's order transferring venue to Harris County returning the felony prosecutions of the Real-Party-in-Interest back to Collin County.

The question now before this Court begins with whether Judge Johnson and Judge Luong had the authority to void Judge Gallagher's change of venue order. The answer to this question will depend on whether Judge Gallagher had the authority to issue the change of venue.[34] As we stated before, this is the only issue briefed, argued, and presented to all the courts involved in this matter. The act of voiding Judge Gallagher's change of venue is

---

[32] *Id*. at 371–75 (Guerra, J., dissenting).

[33] *Id*. at 371–74.

[34] We only deal with the *authority* to make the change of venue—not the *place* of venue. The latter question can only be appropriately addressed on direct appeal. *See e.g., Gregory v. State*, 37 S.W. 752, 752 (Tex. Crim. App. 1896) (finding that changes of venue based on the State's motion that "existing combinations and influences, exerted in favor of the defendant [would] prevent a trial alike fair and impartial to the state and the defendant" is discretionary and "cannot be revised by this court unless it is established beyond any question that the discretion of the court has been abused.").

13

only valid if Judge Gallagher acted outside his authority. Otherwise, the district judges of Harris County will have effectively *negated another district judge's constitutional authority*. Thus, the legal issues before this Court are best summarized in three parts:

> Since the Texas Constitution gives state district court judges statewide authority and because there appears to be a clear distinction drawn between visiting judges and active/elected judges in Chapter 74:
>
> (1) Does Chapter 74 require an active (currently elected) district judge to obtain the permission of the presiding judge of his/her administrative judicial region to "visit" in a region other than their own?
> (2) If so, does that judge need to obtain an "order of assignment" from the presiding judge of his own administrative judicial region?
> (3) And when there are conflicting assignment orders between the assigned judge's home region and the assigned region, which one prevails?

## III. <u>Standard of Review</u>

When a court of appeals denies mandamus relief against a trial court, we review whether relator was entitled to relief against the trial court *de novo*.[35] "A writ of mandamus is an extraordinary remedy that compels a respondent to perform some ministerial act."[36]

To be entitled to mandamus relief, the relator must show there is no adequate remedy in law and that the sought-after act is ministerial in nature.[37] The ministerial in nature prong "is satisfied if the relator can show he has a clear right to the relief sought—

---

[35] *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (orig. proceeding).

[36] *Smith v. Flack,* 728 S.W.2d 784, 792 (Tex. Crim. App. 1987); *see* TEX. CONST. art. V, § 5(c).

[37] *In re State ex rel. Weeks*, 391 S.W.3d at 122.

14

that is to say, when the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."[38] A clear right to the relief sought exists "[w]hen a trial court acts beyond the scope of its lawful authority."[39] Additionally, "an issue of first impression can qualify for mandamus relief when the principle of law is so plainly prescribed as to be free from doubt."[40] "[I]f the terms of a statute are clear, the Court can address its application."[41]

The remedy for an improper venue change on any basis other than lack of authority or jurisdiction is direct appeal after a trial. Changes of venue protect a criminal defendant's right to a fair trial. Thus, absent a void order, appellate courts will only intervene if the defendant did not receive a fair trial in the new venue. Since the Code of Criminal Procedure leaves it up to the trial judge to be satisfied that a fair trial cannot be had in the originating county, we have concluded "it would be difficult to envisage a state of facts by which this court would be warranted in finding that an abuse of discretion occurred."[42]

---

[38] *In re State ex rel. Young v. Sixth Jud. Dist. Ct. App.*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding); *In re Meza*, 611 S.W.3d 383, 388 (Tex. Crim. App. 2020) (orig. proceeding).

[39] *In re City of Lubbock*, No. WR-93,137-01, 2023 WL 1807149, at *5 (Tex. Crim. App. Feb. 8, 2023) (orig. proceeding) (citing *In re State ex rel. Ogg*, 618 S.W.3d 361, 365 (Tex. Crim. App. 2021) (orig. proceeding)).

[40] *In re State ex rel. Wice*, 581 S.W.3d 189, 194 (Tex. Crim. App. 2018) (orig. proceeding); *In re State ex rel. Weeks*, 391 S.W.3d at 122.

[41] *In re State ex rel. Wice*, 581 S.W.3d at 194.

[42] *Cook v. State*, 667 S.W.2d 520, 523 (Tex. Crim. App. 1984) (quoting *Spriggs v. State*, 289 S.W.2d 272, 273 (Tex. Crim. App. 1956)); *Gregory v. State*, 37 S.W. 752, 752 (Tex. Crim.

## IV.     The State's Raised Procedural Grounds

Before reaching the merits, the State argues that it wins because of two procedural reasons. First, the State contends that the Real-Party-in-Interest failed to timely object to Judge Gallagher's authority to preside over the case. Second, the State argues that the "law of the case" doctrine compels a favorable result. We disagree with the State on both arguments.

### A. *Objection Timeliness*

First, the State contends that the Real-Party-in-Interest failed to timely object that Judge Gallagher lacked authority to rule on the change of venue motion.[43] As a result, the Real-Party-in-Interest forfeited its right to object on this issue.

---

App. 1896) (finding that changes of venue based on the State's motion that "existing combinations and influences, exerted in favor of the defendant [would] prevent a trial alike fair and impartial to the state and the defendant" is discretionary and "cannot be revised by this court unless it is established beyond any question that the discretion of the court has been abused.").

[43] In Texas, courts have jurisdiction—the power over the subject matter and person, while judges have authority—the power to preside over a case. *See Davis v. State*, 956 S.W.2d 555, 557–60 (Tex. Crim. App. 1997) ("While our case law has called the authority of the judge to preside a jurisdictional issue, we now disavow that characterization, because as we have explained, jurisdiction or judicial power is vested in courts, not individuals."); *see also Lackey v. State*, 364 S.W.3d 837, 844–48 (Tex. Crim. App. 2012) (explaining that Appellant properly preserved his objection to the lack of authority of an appointed municipal court judge).

The rulings of a judge who lacks authority may be declared void or voidable depending on the underlying reason for their lack of authority. If a judge lacks the constitutional and statutory qualifications to be a judge, or if the judge is constitutionally or statutorily disqualified from hearing a case, then the underlying proceedings are deemed void. *Davis*, 956 S.W.2d at 559. It is as if the proceedings never occurred—the actions of the judge are a nullity. However, if the reason for the lack of judicial authority is a violation of statutory procedure, then the underlying proceedings are deemed voidable. *Id*. An objection is required for an appellate court to review a voidable proceeding. *Id*. (citing *Miller v. State*, 866 S.W.2d 243, 245–46 (Tex. Crim. App. 1993)). Thus, the timeline of an objection is relevant for a voidable proceeding.

16

The State argues that the Real-Party-in-Interest forfeited his right to object that Judge Gallagher lacked authority because the Real-Party-in-Interest had notice of *Assignment Order III* prior to Judge Gallagher granting a change of venue. The State points to an April 25, 2017 letter from Presiding Judge Murphy to the Real-Party-in-Interest's counsel, which stated in part:

> Documents were delivered to you November 5, 2015 in response to your prior requests for information regarding Judge Gallagher's assignment to our region. Attached are additional copies of the documents we have that are responsive to your current request.[44]

However, the December 21, 2015 *Assignment Order III* had not yet been made when the documents were delivered to the Real-Party-in-Interest on November 5, 2015.

There is nothing in the record that proves that the Real-Party-in-Interest had notice of the December 21, 2015 *Assignment Order III* before April 25, 2017. Subsequently, on May 10, 2017, the Real-Party-in-Interest filed the underlying "Paxton's Objection to Rulings Made by Judge Sitting by Expired Assignment and Motion to Return Case to Presiding Judge of the 416th District Court."[45] Though the record is incomplete on this point, we will assume that the objection to Judge Gallagher's authority was timely.

---

The challenged *Assignment Order III* (containing the latest expiration date) in the instant case could make the underlying proceedings voidable because it does not deal with Judge Gallagher's constitutional or statutory qualifications to be a judge. Rather, the case deals with a potentially voidable venue transfer order because Judge Gallagher may have lacked a proper procedural mechanism (an unexpired order assigning him to the region) to sit in Collin County when he granted the venue transfer motion.

[44] App. to State's Petition for Writ of Mandamus, at Tab 29.

[45] *Paxton App.*, at *138–43; *see* App. to State's Petition for Writ of Mandamus, at Tab 30.

**B.** *"Law of the Case" Doctrine*

Second, the State also contends the "law of the case" doctrine requires treating the April 11, 2017 change of venue to Harris County as a valid order, because the Fifth Court of Appeals voided Judge Gallagher's rulings *after* he signed the venue transfer order. The Fifth Court of Appeals voided those orders pursuant to the Texas Code of Criminal Procedure because the Real-Party-in-Interest objected to Judge Gallagher continuing to preside over his case once it was transferred to Harris County.[46]

However, the Fifth Court of Appeals opinion did not answer the question as to whether Judge Gallagher's rulings were void because *Assignment Order III* expired. We decline to apply the "law of the case" doctrine when the appellate court did not address the underlying question regarding this petition for writ of mandamus—whether Judge Gallagher had authority to grant the change of venue to Harris County on April 11, 2017.

## V. The Law Granting Authority to Judges

Texas judges primarily derive their authority to preside as judges from two main sources: the Texas Constitution and a collective scheme of statutes known as the Court Administration Act.[47] Now codified as Chapters 74 and 75 of the Texas Government Code, the Court Administration Act created additional categories of judges and statutory avenues to keep the judicial system functioning efficiently by means of judicial assignment to cases

---

[46] *See* TEX. CODE CRIM. PROC arts. 31.05, 31.09.

[47] TEX. CONST. art. V; TEX. GOV'T CODE, chapters 74, 75.

and courts. Texas created judicial regions in 1927 for this purpose.[48] Each county falls under one of the eleven administrative judicial regions in Texas, with each region being headed by a regional presiding judge.[49] The presiding judge of the region facilitates docket management within his region.[50] A regional presiding judge may assign an active district judge to preside over a specific case in his region or to sit in a court and hear all matters.[51] Thus, when a district judge is disqualified or recused, the regional presiding judge of that region has the authority to assign the case to themselves or another judge.[52]

The Texas Constitution and the Court Administration Act, however, apply differently to the different categories of judges. Thus, to examine how elected judges, such as Judge Gallagher, are lawfully empowered with authority, we first provide some needed context.

### A. Types of Judges in Texas

The Court Administration Act provides four categories of judges—active, retired, former, and senior.

- "Active Judge" means a current judicial officeholder.
- "Former Judge" means a person who served as an active judge in a district . . . but who is not a retired judge.

---

[48] *See Ex parte Holmes*, 754 S.W.2d 676, 679 (Tex. Crim. App. 1988); *Eucaline Medicine Co. v. Standard Inv. Co.*, 25 S.W.2d 259 (Tex. Civ. App.—Dallas 1930, writ ref'd).

[49] TEX. GOV'T CODE § 74.042; *see* TEX. GOV'T CODE §§ 74.046, 74.047.

[50] *See* TEX. GOV'T CODE §§ 74.046, 74.047.

[51] *See* TEX. CONST. art. V, § 11; TEX. GOV'T CODE §§ 74.052(a), 74.056(a)–(b).

[52] TEX. GOV'T CODE § 74.056(a); TEX. GOV'T CODE § 74.047; TEX. R. CIV. P. 18a, 18b; *see De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) (affirming *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) in holding that TEX. R. CIV. P. 18a and 18b apply in criminal cases).

- "Retired Judge" means a retiree; or a person who served as an active judge for at least 96 months . . . and has retired under the Texas County and District Retirement System.
- "Senior Judge" means a retired judge who has elected to be a judicial officer under Section 75.001.[53]

## B. Non-Active District Judges

As creations of statute, the authority to sit as a retired, former, or senior judge (also referred to as "visiting" judges) emanates from Chapters 74 and 75, not from the Texas Constitution. In contrast, elected (or "active") district court judges derive their statewide authority from both the Texas Constitution and/or Chapter 74, but not from Chapter 75. The categories and rules for "non-active visiting judges" of this the State fall under these two chapters and not the Constitution, because they no longer hold elected office.

## C. Active District Judges

Elected district court judges first derive their authority from the Texas Constitution. Under Article V, Section 12, elected district judges are granted state-wide authority: "All judges of courts of this State, by virtue of their office, are conservators of the peace throughout the State."[54] Second and supplemental to their constitutional authority, they

---

[53] TEX. GOV'T CODE § 74.041.

[54] TEX. CONST. art V, § 12(a). This express language extends back to the days of the Republic of Texas nearly unchanged. REPUB. TEX. CONST. art. IV, § 4, *reprinted in* 1 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 1074 (Austin, Gammel Book Co. 1898) ("The judges, by virtue of their offices, shall be conservators of the peace, throughout the republic."). This authority applies to the charging of an offense, by indictment or by information. Texas Code of Criminal Procedure Article 1.23 further echoes that all "judges of the District Courts, shall, by virtue of their offices, be conservators of the peace throughout the State." In addition to prosecutions, the Code of Criminal Procedure provision applies to writs and process. There are additional sources of an elected district judge's authority to act outside his home court. For example, district judges may sign warrants statewide.

may also be assigned to preside in any of eleven Administrative Judicial Regions in the State including their own region, by the presiding judge of one of those regions as found in Chapter 74 of the Texas Government Code.[55]

### D. The Authority For an Active District Judge to Preside in a Foreign Region

#### 1. Authority under the Constitution

As "conservators of the peace throughout the State," Article V, Section 11 of the Texas Constitution empowers elected (active) district judges to preside in any district of the State when requested by one with the proper authority. Section 11 is specifically titled "DISQUALIFICATION OF JUDGES; EXCHANGE OF DISTRICTS; HOLDING COURT FOR OTHER JUDGES."[56] The provision in question fully states:

> And the District Judges *may* exchange districts, *or hold courts for each other* when they may deem it expedient, and shall do so when required by law.[57]

While it is certainly possible to interpret the "exchange [of] districts" phrase as an even swap, the phrase in the constitution "or to hold courts for each other" does not require it. The title of the section emphasizes them as separate alternatives to each other. Moreover,

---

[55] Chapter 75 also applies to assignments of "visiting judges." But that Chapter only applies to "former" and "retired" judges as defined in Chapter 74.041—not elected-active judges.

[56] *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 221 (2012) (explaining that under the "Title-and-Headings Canon," the title or section of a statute or constitutional provision can aid in resolving intent of its framers); *see also id*. at 167 ("Context is a primary determinant of meaning.").

[57] TEX. CONST. art. V, § 11 (emphasis added).

the *entire sentence* has been construed liberally in long-standing precedent so as not to require a bench-for-a-bench exchange.[58] This expansive provision traces its roots to the Republic of Texas which also espoused a flexible district judge with state-wide authority:

> [A]ny of the judges of the district courts are hereby authorized to hold the courts in any other district than their own, by arrangement with each other; and all judgements or proceedings before such judge shall be as good in law and equity, as if the court was held by the judge of the district."[59]

---

[58] For instance, in *Isaac v. State*, 257 S.W.2d 436 (Tex. Crim. App. 1953), we affirmed a judge's authority to sit on a foreign bench in which District Judge Frank McDonald of Hill County presided in place of District Judge Max Rogers in a Walker County district court. Nowhere did we require that Judge Rogers had to be presiding in Judge McDonald's district contemporaneously.

The Court of Criminal Appeals took an identical stance even prior to the Court Administration Act:

> Under the Constitution of this State (article 5, §11), district judges are authorized to exchange. . . . Whether at the time, Judge Carrigan was holding court of Judge Dickson or for some one else is not made apparent. We think it may often happen that a district judge, who has the care of a family and sometimes cares of business, is authorized, when in his judgement fairly exercised it is necessary for his own health or to care for the health of his family, . . . to *temporarily absent himself from his post of duty* and by exchange, or by calling on the incumbent of an adjoining or adjacent district, *provide the means for the continued holding of the court*, and that no litigant in such case has a right to retire such exchanging judge from the bench.

*Johnson v. State*, 134 S.W. 225, 226 (Tex. Crim. App. 1910) (emphasis added).

Consistent with this Court's ruling in the early 1900s, the Texas Supreme Court applied a liberal construction of the provision during that same time frame. *See Munzesheimer v. Fairbanks*, 18 S.W. 697, 697 (Tex. 1891) (holding that a requested judge from a different district had authority under Article V, Section 11 to oversee a special term and sit in place of the judge of that district without a bench-for-bench exchange); *see also Connellee v. Blanton*, 163 S.W. 404, 405–06 (Tex. Civ. App.—Fort Worth 1913, writ ref'd) (finding authority Article V, Section 11 for a district judge from a foreign district to "hold court" for a native district judge's court without an exchange of benches).

[59] Act approved Feb. 1, 1842, 6th Cong., R.S., § 1, 1842 Repub. Tex. Laws 85, *reprinted in* 2 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 757 (Austin, Gammel Book Co. 1898); *see also Ex parte Holmes*, 754 S.W.2d 676, 679–81 (Tex. Crim. App. 1988) (detailing the history of judicial assignments in Texas). The initially statutory ability of elected district judges to swap

Under the Texas Constitution, elected district judges have the ability to serve state-wide when properly requested.

## 2. *Authority under Texas Government Code Chapter 74*

On top of the broad Constitutional grant of authority to elected district judges, the Court Administration Act also provides a framework for the *assignment* of judges to cases or courts. Judges (including active district judges) "may be assigned in the manner provided by this chapter to hold court when necessary to dispose of accumulated business in the region."[60] And a judge assigned under the Court Administration Act "has all the powers of the judge of the court to which he is assigned."[61]

The Court Administration Act also provides several ways for a judge to be assigned. Chapter 74 allows the regional presiding judge of the administrative judicial region to assign a judge (including active district judges) to a district court or a specific case in his region.[62] This explicit power exists in addition to the broad authority of a regional presiding judge to effectuate and "improve the management of the court system and the

---

benches and "hold courts for each other" was incorporated into the Constitution of 1845 upon joining the Union, and has survived nearly unchanged to the present day. TEX. CONST. OF 1845 art. IV, § 14; TEX. CONST. OF 1861 art. IV, § 14; TEX. CONST. OF 1866 art. IV, § 12; TEX. CONST. OF 1869 art. V, § 11; TEX. CONST. art. V, § 11.

[60] TEX. GOV'T CODE § 74.052.

[61] TEX. GOV'T CODE § 74.059(a).

[62] *See* TEX. GOV'T CODE § 74.056.

administration of justice."[63] A judge may also be assigned to a specific case or court in any region by the Chief Justice of the Supreme Court of Texas.[64]

### 3. *Chapter 74 and District Judges*

The Court Administration Act, however, does not apply to active district judges the same way it applies to non-active judges. Because active district judges have been elected in accordance with the Constitution, many of the rules in Chapters 74 that specifically apply to non-active or visiting judges are not applicable. For example, there is no requirement for an active district judge to have been on the bench for 96 months in order to be assigned to another court or region in the State.[65] Regional presiding judges are required to keep a list of those eligible to serve as visiting judges; elected district court judges are not on those lists.[66] And even if non-active visiting judges meet all of the qualifications to be on that list, regional presiding judges are granted the discretion to assign, or not to assign, those on that list under Chapter 74.[67]

Although regional presiding judges may elect not to assign active judges within their own region, nothing in the Texas Constitution or Chapters 74 and 75 allows them to prevent active judges from presiding in other districts or regions when requested by one with proper

---

[63] TEX. GOV'T CODE § 74.047.

[64] *See* TEX. GOV'T CODE §§ 74.057, 74.049.

[65] *See* TEX. GOV'T CODE § 74.055(c)(1).

[66] *See* TEX. GOV'T CODE § 74.055(a).

[67] *See* TEX. GOV'T CODE § 74.054(a).

authority such as another district court judge or another regional presiding judge.[68] If the State Commission on Judicial Conduct has taken certain types of action against non-active judges, they are not eligible to sit in a visiting capacity; whereas sitting elected judges may continue to act in their elected judicial positions, accept assignments, or exchange benches, or hold courts for each other.[69] Parties may object to visiting judges in many cases, but not so for elected judges.[70] Elected judges cannot be required to sit by "assignment" outside of their elected court for more than ten calendar days per year without their consent.[71] Thus, while a non-active or visiting judge's authority beings and ends with the Court Administration Act, an active district judge's authority continues under the Constitution even where their Chapter 74 authority ends.

4.  *Requirements from the Home Region's Presiding Judge*

Having established the multiple ways an active district judge is empowered to preside in a foreign district or region, the next question is whether an assignment order by his home region's presiding judge is needed. In short, neither the Constitution nor the Court Administration Act requires it.[72]

---

[68] TEX. CONST. art. V, § 11.

[69] *See* TEX. GOV'T CODE § 74.055(f).

[70] TEX. GOV'T CODE § 74.053(e).

[71] TEX. GOV'T CODE § 74.060(a).

[72] *See* TEX. CONST. art. V, § 11; TEX. GOV'T CODE § 74.056.

It is axiomatic in our system of government that the Constitution always remains supreme.[73] Thus, the broad power granted by the Constitution to district judges may not be taken away by statute. The Legislature may fill the silent gaps of a constitutional power; but they may not limit that power unless it is clearly contemplated by the Constitution.[74] Only a constitutional force may negate a constitutional force.

Since the Constitution was adopted in 1876, this Court has repeatedly relied on Article V, Section 11 as the source of power for district judges to preside in another court anywhere in the State. Half a century ago, Presiding Judge Onion of this Court said:

> The expression "whenever they deem it expedient," as utilized in both constitutional and statutory provisions confers on district judges broad discretionary powers to exchange benches, or hold court for each other, which is reviewable only if an abuse of discretion has occurred. Although the better practice would require one, the exchange may be accomplished without the necessity of a formal order or entry on the record of the reasons for such exchange.[75]

---

[73] *See In re State ex rel. Wice*, 629 S.W.3d at 731 (Goodman, J., concurring & dissenting).

[74] Statutes with the same purpose or object must be read together harmoniously and read under a constitutional interpretation when possible. *Diruzzo v. State*, 581 S.W.3d 788, 799 (Tex. Crim. App. 2019) (citing A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 80 (2012); *State v. Vasilas*, 253 S.W.3d 268, 272–73 (Tex. Crim. App. 2008). "In enacting a statute, it is presumed that: (1) compliance with the constitutions of this state and the United States is intended; (2) the entire statute is intended to be effective; . . . (4) a result feasible of execution is intended . . . ." TEX. GOV'T CODE § 311.021.

[75] *Floyd v. State*, 488 S.W.2d 830, 832 (Tex. Crim. App. 1972).

Thus, this Court has repeatedly held that no formal order is needed for an elected district judge to preside over a different district court.[76] Our civil brethren, also beholden to the same Constitution, have arrived at the same conclusion.[77]

Furthermore, nothing in Section 74.056 dictates a formal order is required when assigning an elected judge to another region.[78] The language of the Court Administration

---

[76] *See Davila v. State*, 651 S.W.2d 797, 799 (Tex. Crim. App. 1983) ("It is not necessary that a formal order be entered for the judge of one district court to preside over a case in place of a duly elected judge, nor is it necessary for the docket sheet or minutes to show the reason for the exchange of benches by district judges."); *Floyd*, 488 S.W.2d at 831–32; *Pendleton v. State*, 434 S.W.2d 694, 697 (Tex. Crim. App. 1968) ("No formal order need be entered for the judge of one district court to preside over a case in the place of a duly elected judge."); *Isaac v. State*, 257 S.W.2d 436, 437–38 (Tex. Crim. App. 1953) ("Judge McDonald being at the time the regularly elected judge of the 66th Judicial District of this State, and not a 'special judge,' was authorized to preside for Judge Rogers without the necessity of the entry of a formal order."); *Richardson v. State*, 228 S.W.2d 179, 180–81 (Tex. Crim. App. 1950) ("Moreover, Judge Morrison, being a District Judge, derived his authority to preside in such court under the provisions of Art. V, Sec. 11, of the Constitution of Texas . . . .").

[77] *In re Commitment of Burd*, 612 S.W.3d 450, 459 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) ("No formal order is needed for an exchange or transfer to take place." (citing *Pinnacle Gas Treating, Inc. v. Read*, 160 S.W.3d 564, 566 (Tex. 2005) (per curiam))); *European Crossroads' Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 51 (Tex. App.—Dallas 1995, writ denied) ("The trial court may exchange or transfer a case on its own initiative. Exchange or transfer does not require a formal order. The minutes of the court do not need to show the reason for the exchange."); *Ex parte Lowery*, 518 S.W.2d 897, 901 (Tex. Civ. App.—Beaumont 1975, no writ) ("Further, we concede that such an exchange may be effected upon the judges' own initiative and that the making and entry of a formal order is not required nor does the reason for the exchange need be shown in the minutes."); *Baldwin v. Leonard*, 110 S.W.2d 1160, 1161 (Tex. Civ. App.—Eastland 1937, writ dism'd) ("[A]n exchange of districts may be effected upon the judges' own initiative, or as the result of a request of one of the judges. The making and entry of a formal order declaring the exchange of districts by the judges is not required; nor is it essential that the docket or minutes show a reason for the exchange." (citing 25 TEX. JUR. p. 346, § 96)); *Marx v. Weir*, 130 S.W. 621, 621–22 (Tex. Civ. App.—Beaumont 1910, writ ref'd) (affirming and stating: "The provisions of the Constitution [Section 11, art. V] need no construction and furnish a complete answer to appellant's contention" where the record was silent as to the reasons and "there was no exchange of districts between said [elected] judges").

[78] TEX. GOV'T CODE 74.056; *see Assignment Order I*; *Assignment Order III* (citing to TEX. GOV'T CODE 74.056).

27

Act suggests that an assignment order to another region from the home region is preferable, but never explicitly mandates it:

(a) A presiding judge from time to time shall assign the judges of the administrative region to hold special or regular terms of court in any county of the administrative region to try cases and dispose of accumulated business.

(b) The presiding judge of one administrative region *may* request the presiding judge of another administrative region to furnish judges to aid in the disposition of litigation pending in a county in the administrative region of the presiding judge who makes the request.[79]

"May" is permissive in nature—not mandatory. Thus, a formal order or request is not required. Nevertheless, even if the statute required a formal order, the supreme nature of the Constitution would invalidate it as applied to active district judges.

Furthering the observations above, the Constitution explains that another district judge may hold court for another judge "when deemed expedient."[80] The statute may not block said expediency in the name of administrative efficiency. It is perhaps desirable for administrative purposes, but it is not constitutionally nor statutorily required that regional presiding judges issue orders to active district judges assigning them to other regions or courts.[81]

---

[79] TEX. GOV'T CODE § 74.056 (emphasis added).

[80] TEX. CONST. art. V, § 11.

[81] *See Floyd v. State*, 488 S.W.2d 830, 832 (Tex. Crim. App. 1972) ("Although better practice would require one, the exchange may be accomplished without the necessity of a formal order or entry on the record of the reasons for such exchange.").

Significant portions of Chapters 74 and 75 cover administrative matters related to all judges assigned in jurisdictions other than their own. Those matters include compensation for the actual judicial work, reimbursement for travel expenses, hotels, per diem, etc. All of these matters require a "paper-trail" for the promotion of the orderly and efficient administration of justice. While this paper-trail may be necessary to compensate and reimburse judges for the work they do, it has nothing to do with granting authority to assigned judges to preside over cases, except where a judge's authority is derived solely from statute. The Court Administration Act, like all statutes, can only add—and never detract—to the grants of authority under the Constitution.[82] Thus, if an elected district judge does not need his home region's presiding judge's permission under the Constitution, he certainly does not need it under Chapter 74.[83]

---

[82] In *Richardson v. State*, 228 S.W.2d 179 (Tex. Crim. App. 1950), we affirmed a judge's authority to sit *by assignment* in a foreign administrative judicial district. There an *active* district judge from the First Administrative Judicial District was assigned to a court by the regional presiding judge for the Third Administrative Judicial District. This Court held that District Judge Morrison of the Third Administrative Judicial District was *statutorily* authorized to preside over the case by assignment. "Moreover, Judge Morrison, being a District Judge, derived his authority to preside in such court under the provisions of Art. V., Sec. 11, of the Constitution of Texas . . . ." *Richardson*, 228 S.W.2d at 180–81.

Our civil jurisprudence has reached the same conclusion regarding the double layers of authority with equal state-wide binding stature. *Eucaline Medicine Co. v. Standard Inv. Co.*, 25 S.W.2d 259, 262–63 (Tex. Civ. App.—Dallas 1930, writ ref'd) (finding with Texas Supreme Court precedential authority that an elected district judge—*statutorily assigned* to another district court by the regional presiding judge of that judicial region—also had *constitutional power* under Article V, Section 11 to hold court for another judge).

[83] *Id.*

### E. Rule for Active District Judges

Harmonizing our constitutional text, statutory language, and our case law once more,[84] we reaffirm the following on when an elected district judge may sit in another Texas district court.[85]

We find once again that, in addition to the district in which they innately preside, duly elected district judges (active district judges) have constitutional authority to sit on

---

[84] While it is this Court's prerogative to alter our case law in all criminal matters, changing course after nearly a century would create a conflicting constitutional interpretation with our co-equal Texas Supreme Court on the civil side. *Richardson v. State*, 228 S.W.2d 179 (Tex. Crim. App. 1950); *Eucaline Medicine Co. v. Standard Inv. Co.*, 25 S.W.2d 259 (Tex. Civ. App.—Dallas 1930, writ ref'd).

[85] The Court of Appeals's majority opinion cited to four cases in its section expounding upon the authority granted by an assignment order. *In re State ex rel. Wice*, 629 S.W.3d 715, 725 (Tex. App—Houston [1st Dist.] 2021, orig. proceeding). Unlike this case, those cases do not deal with an active district judge possessing constitutional authority in addition to authority under Chapter 74. *In re Public Parking System, Inc.*, 60 S.W.3d 877 (Tex. App—Houston [14th Dist.] 2000, orig. proceeding) (concerning former court of appeals justice serving as visiting judge); *Mangone v. State*, 156 S.W.3d 137 (Tex. App—Fort Worth, 2005, pet. denied) (dealing with a visiting judge); *In re Richardson*, 252 S.W.3d 822 (Tex. App—Texarkana 2008, orig. proceeding) (regarding senior judge serving as visiting judge); *Hull v. South Coast Catamarans, L.P.*, 365 S.W.3d 35 (Tex. App—Houston [1st Dist.] 2011, no pet.) (dealing with a visiting judge).

Additionally, the Court of Appeals' majority relies on *Roberts v. Ernst*, 668 S.W.2d 843 (Tex. App—Houston [1st Dist.] 1984, no pet.) to conclude no exchange of benches occurred. Justice Goodman explains that "*Roberts* stands for the commonsense principle that an exchange of benches cannot exist, or be implied from an expired assignment, when the facts definitively show that one judge is interfering with the rightful authority of another. This principle has no applicability here, given that Gallagher was the lone judge presiding over these cases when he transferred them to Harris County." *In re State ex rel. Wice*, 629 S.W.3d at 730 (Goodman, J., concurring & dissenting). We also note, that *Roberts* does not deal with any orders assigning a judge to another region, but rather a couple of competing assignment orders by the regional presiding judge to the same district court in his region.

any bench in any region in the State outside their home region provided they have been requested by the presiding authority for that bench in that region.[86]

Regional presiding judges have the authority to assign a judge to any bench in his region under Chapter 74.[87] They do not and cannot detract from an active district judge's constitutional authority that may be exercised at that judge's discretion.[88] Thus, once properly requested by one with authority and until the invitation by the requesting authority is revoked, no other judge can constitutionally prohibit, remove, or deauthorize a qualified active district judge from sitting outside their district—even where that bench is in a foreign region of the State.[89] The only circumstances that would allow for any such limitations include the aforementioned revocation of the request, recusal, disqualification, the active district judge's objection and request for relief from such an assignment, or that the parties do not consent to the judge following a change of venue.[90]

---

[86] *See* TEX. CONST. art. V, § 11 ("And the District Judges may exchange districts, or hold courts for each other when they may deem it expedient, and shall do so when required by law.").

[87] TEX. GOV'T CODE § 74.056(a).

[88] *See* TEX. GOV'T CODE § 311.021; *see* TEX. CONST. art. V, § 11; *cf. Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void.").

[89] *See* TEX. CONST. art. V, §§ 7(d)–(e), 11.

[90] *See* TEX. CONST. art. V, § 11 ("No judge shall sit in any case wherein the judge may be interested, or where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case . . . .When a judge of the District Court is disqualified by any of the causes above stated, the parties may, by consent, appoint a proper person to try said case; or upon their failing to do so, a competent person may be appointed to try the same in the county where it is

## VI.    **Discussion**

As applied here, Judge Oldner was an active district judge of the 416th District Court in the First Administrative Region. Duly assigned to the instant case, Judge Oldner recused himself from hearing the Real-Party-in-Interest's case and referred the case to his home region's presiding judge of the administrative region including Collin County—Presiding Judge Murphy.  At this point, it was unmistakable and undisputed that Presiding Judge Murphy had authority to make an assignment over the case.[91] Presiding Judge Murphy assigned Judge Gallagher (the elected judge for the 396th District Court in Tarrant County) to the 416th District Court to specifically hear the Real-Party-in-Interest's case. Presiding Judge Murphy made this assignment to be effective without a time limit consistent to and within her discretionary authority as a regional presiding judge.

The assignment from the presiding judge of the region covering Collin County was sufficient to grant Judge Gallagher, an active judge, the requisite authority under the Constitution to sit in the case. This assignment to hear the Real-Party-in-Interest's case was

---

pending, in such manner as may be prescribed by law."); *see also* TEX. GOV'T CODE § 74.060(a) ("An active judge may not, without the judge's consent, be assigned out of the judge's district or county for more than 10 calendar days in a year."); TEX. CODE CRIM. PROC. art. 31.09(a) (requiring consent of the parties before a judge can continue to preside over a case after ordering a change of venue).

[91] TEX. R. CIV. P. 18a, 18b; *see* TEX. GOV'T CODE § 74.058 (b) (empowering a regional presiding judge to relieve a judge of an assignment on presentation of "good cause"); TEX. GOV'T CODE § 74.047 (empowering a regional presiding judge to "perform the acts necessary to carry out the provisions of this chapter [Ch. 74] and to improve the management of the court system and the administration of justice"); TEX. GOV'T CODE § 74.056 (empowering a regional presiding judge to assign judges "to try cases and dispose of accumulated business").

32

never revoked by Presiding Judge Murphy.[92] Nor did Judge Gallagher seek relief of the assignment.[93]

While the order transferring Judge Gallagher to another region expired (*Assignment Order III*), no assignment order from Judge Gallagher's administrative judicial region was ever required because Judge Gallagher was an elected judge.[94] As an active district judge, Judge Gallagher had constitutional authority to sit in any district court across the state, provided another district judge, regional presiding judge, or the Chief Justice requested him. Here, Presiding Judge Murphy provided the keys to the 416th District Court to preside over the Real-Party-in-Interest's case.

Because Presiding Judge Murphy assigned Judge Gallagher to specifically hear the Real-Party-in-Interest's case, no further formal order transferring Judge Gallagher from the Eighth Administrative Judicial Region to the First Administrative Judicial Region was necessary to grant Judge Gallagher the authority to sit in the 416th District Court. Judge

---

[92] *Assignment Order II*. There is nothing in the record to suggest that Presiding Judge Murphy revoked Judge Gallagher's assignment to hear the Real-Party-in-Interest's case.

[93] *Id*.; TEX. GOV'T CODE §§ 74.058, 74.060(a).

[94] Continuing beyond the expiration date of the assignment order from Judge Gallagher's home region had only one effect: Judge Gallagher was no longer statutorily obligated to preside over the instant case. Nevertheless, Judge Gallagher, as an active district judge, maintained his *constitutional power* to continue presiding over the case so long as he was willing and the First Administrative Judicial Region's presiding judge remained willing.

Again, we note that the email exchange between the administrative assistants for the regional presiding judges of the First and Eighth Administrative Judicial Regions demonstrate an intent for Judge Gallagher to continue to be assigned to the First Administrative Judicial Region past January 2017. They suggest that both regional presiding judges correctly understood that an additional extension order was not needed for the First Administrative Judicial Region to continue to retain Judge Gallagher on the case.

Gallagher was properly requested by one with authority in Collin County—Presiding Judge Murphy. While the order signed by Judge Evans may have facilitated other administrative matters related to Judge Gallagher's assignment in Collin County, the assignment order could not, by itself limit the underlying authority of the elected district judge from sitting in another court. Indeed, there is nothing in the language of 74.056(b) that requires any order of assignment from an elected judge's home region's presiding judge to another region. Moreover, there is nothing in the record to suggest that Judge Gallagher was constitutionally or statutorily disqualified from sitting as a judge on the 416th District Court. And there is nothing to suggest that Presiding Judge Murphy revoked Judge Gallagher's invitation to a court within Presiding Judge Murphy's administrative region.

Judge Gallagher had authority to sit in the 416th District Court to preside over the Real-Party-in-Interest's case when he issued the venue transfer order on April 11, 2017.[95] To hold otherwise, would erroneously limit the constitutional statewide authority vested in duly elected district court judges by the Texas Constitution.[96] Moreover, it would require this Court to interpret 74.056 in such a way that an elected district court judge would have

[95] Real-Party-in-Interest's arguments are predicated on the condition that Judge Gallagher was a visiting judge. We note that Real-Party-in-Interest's arguments (that Judge Gallagher's assignment by Presiding Judge Evans was temporally restricted) relied on case law dealing with visiting judges—not active district judges. However, Judge Gallagher was not a "visiting judge" as the law defines him. For the purposes of Chapter 74, he was an "active district judge," and constitutionally, a "conservator of the peace throughout the state."

[96] In his dissent, Judge Yeary asserts that the Court is mistaken for our incorrect focus and that we have "no good reason[s]" for conditionally granting mandamus today. But it is never a judicial sin to follow the Constitution and the rule of law. And mandamus must at least be appropriate when a judge, over a party's objection, ignores the Constitution.

to obtain the permission of his regional presiding judge to sit in another region when requested to do so by one in authority. Simply put, the statute does not say that and even if it did, it could not override that constitutional authority conferred upon elected district judges.

Judge Gallagher's order changing venue to Harris County is a valid order.[97] As we have said before, venue, unlike jurisdiction is waivable.[98] Here, the parties clearly waived

---

[97] We have been criticized that the venue change order was correctly voided because Judge Johnson and Judge Luong *may have thought* Judge Gallagher was outside his authority by failing to choose the appropriate venue under statute.

But first, what Judge Johnson and Judge Luong *may have thought* is not in the record. This is pure speculation. And assertions "not supported by evidence in the record will not be considered" on review. *Franklin v. State*, 693 S.W.2d 420, 431 (Tex. Crim. App. 1985). Making arguments not made by the parties in a case such as this comes dangerously close to advocacy. And this Court is constitutionally required to remain separate from such a role.

Second, even if we were to entertain the above argument, it would still not entitle any judge to void Judge Gallagher's change of venue order. By claiming his *choice* of venue was erroneous, this argument implicitly concedes that the predicate decision to *change* venue was completely valid.

[98] *Ex parte Watson*, 601 S.W.2d 350, 351 (Tex. Crim. App. 1980). Judge Yeary states that he is "concerned" that "the Court might unwittingly be establishing a rule permitting venue-by-consent in all cases . . . ." J. Yeary's Dissent at *15. Most rights—even those established in the U.S. Constitution, such as the Fourth Amendment—are waivable by express consent. *See Proenza v. State*, 541 S.W.3d 786, 792 (Tex. Crim. App. 2017) (discussing category-one, -two, and -three *Marin* rights). As we explained in *Proenza* and *Marin*, that is how rights work. Courts should generally not interfere with the free choice of the parties absent an objection or issue of fundamental fairness. Only those rights recognized as fundamental or systemic to the fair administration of justice (category-one *Marin* rights) can never be waived. And as we have clearly established in *Ex parte Watson*, venue is not a category-one *Marin* right: "Unlike jurisdiction, venue may be acquired by consent." *Ex parte Watson*, 601 S.W.2d 350, 351 (Tex. Crim. App. 1980); *see id.* at 352 ("It is apparent from above that, strictly as a matter of jurisdiction, a district court may try any case in which the offense takes place within the State. Of course in a given case venue may not be proper under the provisions of Chapter 13 of the Code of Criminal Procedure. The failure to comply with those provisions, however, does not deprive the district court of jurisdiction. Ultimately, whether the provisions of Chapter 13 are enforced depends on whether

any objections under Article 31.02 and consented to a non-adjacent county.[99] Therefore, Judge Gallagher had the discretion as a judge with constitutional and statutory authority to change venue to Harris County even though it is a non-adjacent county.[100] And the Constitution requires more than mere disagreement to void the rulings of one of its judges acting within their discretion.

Thus, the act of voiding Judge Gallagher's valid order was clearly unlawful because it violated Judge Gallagher's judicial authority flowing from both the Texas Constitution and our statutes.[101] Nevertheless, because one of the parties objected to Judge Gallagher

---

the defendant asserts his rights under those provisions. We conclude that the trial court in this case had jurisdiction of the cause even if venue were improper.").

[99] "Indeed, the law of invited error estops a party from making an appellate error of an action it induced." *Druery v. State*, 225 S.W.3d 491, 506 (Tex. Crim. App. 2007) (internal quotes omitted).

[100] Judge Yeary claims that the State still has a remedy and therefore, mandamus is inappropriate. He claims the State could simply file another motion to change venue in Collin County. However, his proposed remedy is no remedy at all. Under the wrong set of circumstances and judicial rulings, it could lead to an infinite loop of venue changes before an appropriate venue is identified. The core right protected by venue change procedures is the right to a fair trial for both the State and defendant. *See* U.S. CONST. amend. VI; TEX. CODE CRIM. PROC. art. 2.03 (b) ("It is the duty of the trial court, the attorney representing the accused, the attorney representing the state and all peace officers to so conduct themselves as to insure a fair trial for both the state and the defendant, . . . ."). The protections we have in place to ensure this core right would be undermined under the proposed remedy.

[101] As we stated above, when there is no adequate remedy at law, a clear right to mandamus relief exists "[w]hen a trial court acts beyond the scope of its lawful authority." *In re City of Lubbock*, No. WR-93,137-01, 2023 WL 1807149, at *5 (Tex. Crim. App. Feb. 8, 2023) (orig. proceeding) (citing *In re State ex rel. Ogg*, 618 S.W.3d 361, 365 (Tex. Crim. App. 2021) (orig. proceeding)).

presiding over the case after the change of venue was granted, Judge Gallagher was properly replaced following his order to change venue.[102]

## Conclusion

We have previously held that mandamus relief can be warranted "when the issue involves an unambiguous statute [and constitutional provisions], or when 'the combined weight of our precedents clearly establishes' the proposition of law on which relief is predicated."[103] In this case, mandamus is clearly warranted because of what is bindingly dictated by all three—the second stretching centuries since its Republic of Texas inception, and the other two just shy of one.

The standards we use to judge will inevitably be applied against us. Thus, even the noblest of goals, no matter how righteous, cannot justify improper means.[104] It leads away from the enlightened order provided under the rule of law. Today we fulfill our duty by upholding our Constitution's rule of law and affirming the wisdom of its framers. Thus,

---

[102] TEX. CODE CRIM. PROC. art. 31.09(a).

[103] *In re Meza*, 611 S.W.3d 383, 389 (Tex. Crim. App. 2020) (first citing *In re State ex rel. Wice v. Fifth Jud. Dist. Ct. App.*, 581 S.W.3d 189, 194–95 (Tex. Crim. App. 2018) (orig. proceeding), and then citing *In re State ex rel. Weeks*, 391 S.W.3d 117, 126 (Tex. Crim. App. 2013) (orig. proceeding)).

[104] *See Paine, Thomas*, THE AMERICAN CRISIS (Dec. 23, 1776) ("THESE are the times that try men's souls. The summer soldier and the sunshine patriot will, in this crisis, shrink from the service of their country; but he that stands by it now, deserves the love and thanks of man and woman. Tyranny, like hell, is not easily conquered; yet we have this consolation with us, that the harder the conflict, the more glorious the triumph. What we obtain too cheap, we esteem too lightly: it is dearness only that gives every thing its value. Heaven knows how to put a proper price upon its goods; and it would be strange indeed if so celestial an article as FREEDOM should not be highly rated.").

Judge Gallagher had constitutional and statutory authority to preside when he ordered the change of venue to Harris County. The district court in Harris County had no authority to void it. We conditionally grant the State's petition for writ of mandamus. The writ of mandamus will issue only in the event that the courts below fail to comply with this opinion.

Delivered: June 14, 2023
Publish